oral arguments not to exceed 15 minutes per side. John F. Clark for the appellant. Your Honor, if I may, I'd like to reserve three minutes for rebuttal. Very well. Thank you. I may please the court, Your Honors. John Clark here on behalf of defendant and appellant Todd Jeffrey Simmons. Your Honors, this case involves primarily two issues. I have two arguments on one of the enhancements, a third argument on a second issue. The major enhancement that we are challenging on appeal was a four level enhancement, a substantial increase to the sentence for Mr. Simmons, which involved USSG 2K2.1B6B, which allows for a four level increase for someone who's been convicted of being a felon in possession if they used the possession of that firearm or ammunition in order to facilitate another felony offense. First thing I'd like to address is my argument on the sufficiency of evidence to uphold this particular enhancement. I'd like to start with the first point that when the other felony offense is sought to be applied, that being the one apparently facilitated by the firearm or ammunition possession, the statute, and Judge Clay, in your opinion, I should state was an affirmance. However, your rule holds true here in this case today. The statute, which sought to be applied, was an unidentified possession with intent to distribute marijuana. Marijuana in some undefined amount was recovered when Mr. Simmons was arrested. However, the probation officer, the government, the court, no one ever identified what possession with marijuana, possession with intent to identify, but not the statutory site. The general crime. That's correct, Your Honor. And I think that one of the things you dispute that it's a felony. Well, Your Honor, what I wanted to focus on was that the application note says that it can be federal, state, or local. So it's hard to even know, I think, what we're looking at. There was no statute that was ever specifically identified. So it's hard for me to say, I guess, whether I can dispute whether or not. I mean, certainly there's a Michigan felony for possession with intent to distribute marijuana, which I even noted in the brief. I said, you know, here's what the analysis would be if it were the MCL statute. But I think that the primary focus is that there was no identification at all of either a federal, state, or local statute. My understanding is that your client didn't object to that, or counsel didn't object at sentencing. Well, I'll say a couple of things about that, Your Honor. One, there was definitely an objection. There was a contest, I should say, about whether the enhancement applied. That was I think that there was some... It was about whether the firearm was actually used... In connection with another felony offense. And so to your question, Your Honor, there was some confusion about the level of contest, I would say, about whether or not there was an objection to whether Simmons was dealing marijuana. And I will say this, there was a clearly erroneous factual finding. I know in any number of cases that this court has seen, defendants may come in and say, well, this is a clearly erroneous finding by the trial judge. There was, in fact, a clearly erroneous finding by the trial court, as to your point, Judge White. And this was objected to in the pre-sentence report. You compare the... What was the clearly erroneous finding? In the pre-sentence report, there was a confidential informant who had... Oh, yes. About the confidential informant. Okay. Right. And so there was, who had apparently tipped off this multi-jurisdictional task force. Right. But that was eliminated from the... That was. You're absolutely correct, Judge. It was eliminated from the final pre-sentence investigative report, investigation report. The court, however, said there was no objection to the statement in the pre-sentence report that Mr. Simmons was selling marijuana to a confidential informant. That was a clearly erroneous finding by the court. Right. But did anybody ever contest that there was an associated felony involved? I was under the impression, and correct me if I'm wrong, I was under the impression that the dispute had to do with whether that gun really had anything at all to do with the marijuana. Where it was located, who's... How much marijuana there was, whose it was, the whole thing. And that nobody ever said, look, there was no felony. I will say this, Your Honor. My argument about insufficient evidence of this finding is plain error. So I will say that at the sentencing hearing, and I addressed this in my brief because I wanted to address it, there was some discussion by defense counsel, defense trial counsel, which stated, well, if this was the amount of marijuana, it wasn't that much. But my position is that there was no clear concession that there was a felony offense taking place. No clear binding admission on the defense. And so my argument is based on the insufficient evidence in light of that. And I address that. I do say that there was some discussion and some hypotheticals about whether or not this amount of marijuana, which was a felony ongoing, but there was no clear admission or concession. I also address that I think that Simmons should not be held to certain statements in the pre-sentence report that I think the government said the court was entitled to rely on. So our position is there was no concession that there was another felony ongoing. And then in light of that, the evidence that was found in the pre-sentence report, it was not confirmed that he was held because it didn't show that he had marijuana to a felony level or what? I think there's a couple things, Your Honor. One, the marijuana that was recovered, it's not defined at all how much was recovered. It never is in this record at all. The pre-sentence report says four jars and two containers. There's some talk about eight ounces at one point, but I believe that was an error by defense counsel. Because in the pre-sentence report, it said the confidential informant said at one time he had seen Mr. Simmons with about eight ounces of marijuana. It's never discussed how much was recovered from Mr. Simmons' residence. So that's one. There's no amount of marijuana that is competent. I mean, in terms of the weight is not identified in this. Second, as I said, with Judge Clay's opinion, that the statute must be specifically identifiable in order for the government to show that the firearm possession was used to facilitate another felony. No statute was ever defined. Judge Clay, you were also on a panel in a recent opinion, US v. Ford in 2014, in which the panel reversed because the panel found that the district court should not have applied the enhancement without expressly finding that all of the elements of the statute were met. Here, we'd have an undefined, unidentified statute with statutory elements that were never analyzed at all because the statute remained undefined. In light of that, in light of the fact that there was, our position is a clearly erroneous finding by the district court. No admission binding on Mr. Simmons, as well as no proof of constructive possession, I should say also, of the marijuana. This was a duly occupied residence. He was not the sole resident of the house where the marijuana was recovered. In light of all that, the position is that there is insufficient evidence to uphold the enhancement. Now, I should note for the court, too, that this is on plain error review. I noted that in this particular argument, my second argument, I noted that in my brief, and I think that this satisfies the plain error test as well. I think under this court's prior cases, particularly Bullock, Ford, there is an insufficiency of evidence here. I think the error is plain. I think the error is plain from the record. Third, did it affect Simmons' substantial rights? Absolutely. This was an enhancement that drove his guidelines from 57 to 71 to 84 to 105. And the court sentenced in the middle of the range, so we're talking upwards of 30 to 32 months in addition. And so finally, I think the fairness of the proceedings were affected in that Simmons essentially had no notice of a statute that was sought to be applied by the government, by the court, by the probation officer, that being the other felony offense. If I could address also my first argument, and Judge White, this was as to your question regarding what happened at the sentencing hearing. There was sort of an academic argument about whether or not this enhancement could be applied in light of the fact that mainly there was only ammunition found in close proximity to the marijuana. And I cited a case that is a reported case in this circuit, US v. Coleman, which was a two-to-one decision that did find that ammunition alone in close proximity could be used to support the enhancement. Judge Gilman dissented forcefully saying that that was not a good ruling, but I think that we can also distinguish Coleman in that in Coleman there was no contest that there was another felony offense being committed. That's one distinction. Two, didn't have the same level of drug trafficking instrumentalities here in this case as well vis-a-vis Coleman. So I think that that can also be distinguished along those lines versus this case. My time's up at the moment. I do have the rebuttal time, so I will take my seat at the moment. All right. May it please the court, just and present for the United States. I'll start with some arguments raised by my opponent. First, he claims that there was no felony offense specifically identified by the district court in making its findings. And the reason for that was because it was conceded at the district court level that there was another felony offense by trial sentencing council. I understand why my opponent on appeal wishes to distance himself from that strategic determination. Does that mean you still have to identify a felony? Well, I think, Judge White, that judges need to address the disputes that are brought before them. That's kind of the fundamental premise behind plain error review that this court looks to. And where defense counsel makes the logical concession at sentencing that there was another felony, which is logical because he wants to focus on his stronger argument, even though ultimately it doesn't carry the day, the in connection with the nexus between the firearms and the other felony. There's no reason for the district court to address it. And here, defense counsel did concede that there was another felony and focused his arguments on in connection with. What was it? It was possession with intent to distribute marijuana. And is there a minimum quantity required for that? I do not. I don't know if under Michigan law there is a minimum quantity. I think Michigan law actually defines it with reference to maximum quantities. So if you possess a certain amount with intent to distribute but it's less than a certain amount, it defines the statutory maximums differently. But I'm not sure there's a minimum quantity if the government can prove intent to distribute, whether it's the local state or federal government in that case. So it was based on a Michigan offense? I believe so, yeah. I mean, the statute, my opponent is correct, it's never identified. My opponent does acknowledge in his brief the statute that would make it illegal. With respect to quantity, there is evidence of quantity in this case, and that comes from two sources. First, defense counsel acknowledged at sentencing again that there was approximately a half pound of marijuana. That was three times the quantity of marijuana that was at issue. But that half pound was seen by the informant, right? That was never actually in anybody's hands, right? Well, my speculation would be, and defense counsel isn't here from sentencing to acknowledge it, that in his investigation he would have determined how much was at issue to determine if he wanted to fight whether there was another felony, whether it was a distribution quantity of drugs or a simple possession quantity of drugs. So defense counsel did acknowledge at sentencing that there was a half pound, and the confidential informant, Your Honor is correct, also stated that he had seen him with a half pound of marijuana. Right, but in terms of the amount that was seized, do we know how much that was? Based on the record, I think the clearest indication of that is actually the one given by defense counsel at sentencing, that there was a half pound. The pre-sentence report does say that there's six separate containers of marijuana located in the residence, and it's a logical thing for a defense attorney to do in his investigation to look at the quantity and figure out whether it makes sense to contest whether there was a felony. This doesn't seem a little sloppy to you. No, Your Honor, I don't think it does. The reason is because the strategic decision for any trial lawyer is to figure out where his or her strongest arguments are to prevail on the day, and so if you investigate at the trial court level, both on the government side and the defense side, what the facts are, and you think you don't have a credible argument that there wasn't a felony, in this case given the statement of the CI and the fact that there are six separate containers of marijuana found in that upstairs bedroom, that the logical thing for a defense attorney to do would be to focus on the nexus. I'm not saying the defense attorney. I'm saying the prosecution. It seems to me to be very sloppy to walk in asking for enhancement based on an associated felony and not know what felony you're talking about. Well, I think the government marshals its proofs in order to address what the disputes will be at sentencing. As Your Honor knows, the pre-sentence report is prepared. The parties lodge objections to the pre-sentence report so that the parties know what factual issues will be contested at sentencing, and here the issue to be contested at sentencing was the nexus, the in connection with requirement, and not whether there was an underlying felony, and so I think that was an appropriate strategic decision by defense counsel and therefore it was appropriate for the government not to marshal its proofs with respect to the particular drug quantity at issue. My opponent also raises what he alleges are clearly erroneous findings. We've already addressed the quantity. I don't think, I think the record is clear that, or at least what indications there are in the record indicate that there's a half pound of marijuana, which was three times the quantity at issue in this court's decision in Coleman. He also talks about the district court statements with respect to the fact that Mr. Simmons sold marijuana to the CI, that there was that statement made by the district court, and I'd like to make two points about it. First, as Your Honor pointed out when my opponent was arguing that the initial assertion objected to in the initial PSR about eight sales between the defendant and the CI was removed, and I don't believe the district court relied on it. I think the district court may have simply misspoke, and even if it wasn't simply misspeaking in that case, I think there's sufficient evidence for this court to find harmless error on that point given the other factors before the district court and cited by the district court in support of upholding the enhancement. And I'll touch briefly on those factors. Here you have a defendant who lives in a house with two upstairs bedrooms. In one upstairs bedroom, as we've talked about, there's six containers of marijuana. In the other upstairs bedroom, there's a machine gun and a semi-automatic pistol, and what the record shows is that when police arrived to execute the search warrant at the house, the defendant, Mr. Simmons, went and retrieved the semi-automatic pistol. He loaded it. He brought it downstairs. According to his own admission, he said he was planning to commit suicide and changed his mind at the last minute. That's why the firearm was found downstairs when the police arrived. But he says he kept that weapon in an upstairs bedroom with the machine gun. There was ammunition both in the room where the drugs were found and ammunition in the room where the machine gun and the semi-automatic pistol were found. And so the district court, in applying the enhancement, looked to the number of firearms, the type of firearms, the legality of their possession. Those are all factors that are recognized by this court as appropriate in analyzing the so-called fortress theory under 2K2.1b6b or the related fortress theory that was developed in 924C jurisprudence. And given those factors, the court, quite rightly in the government's view, found that the firearms were being possessed in connection with the other felony offense. Firearm is loaded. There are multiple firearms. Machine guns are not lawful to possess, even for personal protection. The defendant was found with a large amount of cash on his person, even though his legitimate income was only approximately $600 a month in disability. These are all factors that tend to show that he was dealing drugs. And in addition to the statement made by the CI that he was dealing drugs, corroborated by the marijuana found at the house, these are all factors that tend to show that the weapon was possessed in connection with the other felony offense. Now, this court has said that although the government bears the burden of proving this enhancement by preponderance of the evidence, it's not an onerous burden. Under 14A, all the government needs to show application of 14A is that the weapon or firearm facilitated or had the potential of facilitating another offense, in this case, protecting the drugs or helping him to deal the drugs. Or under 14B, that the firearm or ammunition was found in close proximity to the drugs in the specific instance where the other felony offense is drug trafficking. And here, under this court's controlling precedent in Coleman, which as I noted involved a smaller quantity of marijuana than at issue here, this court held that when ammunition is found in close proximity to drugs, that alone is sufficient under application of 14A to apply the enhancement because the ammunition had facilitated or had the potential to facilitate the other felony offense. Now, my opponent attempts to distinguish Coleman, and in the government's view, if Coleman can be distinguished from this case, it's only because this case presents more serious factors than in Coleman. So the ammunition is found in close proximity, or some ammunition is found in close proximity to the drugs. But of course, in the next room, unlike in Coleman, there are two firearms. There's additional ammunition. And so this is not a circumstance where the government is relying on ammunition alone in order to apply 2K2.1B6P. But the government relies also on the guns. Now, I think there's been a little bit of a strawman created here under 14B, the close proximity issue, about whether the guns can be considered in close proximity to the drugs because they're in a different room. Now, this court has never held that the fact that the guns are in one room and the drugs are in another room means that they are not in close proximity. In fact, it's held to the contrary. In this court's decisions in Israel and in Enga and in Taylor, the drugs and the guns were located in different rooms, but this court upheld the application of the enhancement in part based on the fact that there was some proximity between the guns and the drugs. And that's a logical conclusion because under the fortress theory, what the court is trying to do is figure out, well, did the guns have some emboldening role in the drug trafficking offense? And just because your guns are kept in one room and your drugs are kept in the other room doesn't mean that if someone comes to rob your stash or someone comes to your house for a deal, if you need to go get that gun, that gun is just in the next room. You can load it just as Mr. Simmons did when the police came to his door and take it downstairs to meet whoever's at your house. Now, Mr. Simmons knew, of course, that there was a risk in being a drug dealer and it was a dangerous profession because in 1999, he was convicted of robbing a drug dealer or he was convicted of offenses related to the fact that he robbed someone who was dealing drugs, went to a drug house to rob it. That was reflected in the PSR and is another factor that supports the application of the enhancement here. And, of course, at the end of the day, we have the standard of review. Even if this court thinks it's a close call, this court says that the 2K2.1B6B enhancement is ultimately a fact-bound question. Factual findings of the district court, of course, are reviewed for clear error and this court owes due deference to the district court's determination of whether the enhancement should apply. And so even if the question is close, this court should affirm under the standard of review. Now, I'll touch briefly on the reasonableness challenges, which is namely that my opponent argues that the district court did not adequately consider the potential that his client had Huntington's disease. Now, the defendant has never introduced record evidence that he, in fact, has Huntington's disease, even to this day. And even so, the district court still did adequately consider it. Under reasonableness review, the question is really just whether the district court abused its discretion in weighing the factor of the potential of the defendant to have a certain medical condition. And here, it's clear that the district court didn't abuse its discretion. The district court, in fact, considered the diagnosis when it was brought to its attention by adjourning sentencing and then ultimately in weighing it against the other 3553A factors, determined that irrespective of whether he had Huntington's disease, it wouldn't make a difference at the end of the day to what custodial sentence he should receive for being a felon in possession of firearms. And the district court ordered, as part of its judgment, that the defendant, while in the custody of Bureau of Prisons, receive the necessary medical treatment. That was appropriate for the district court to do and supported by this court's precedents. And if the court doesn't have any questions, I'll yield what very little remains of my time. All right. Thank you. Just a couple of final points, Your Honors, based on what Mr. Prezant presented. Judge White, you had asked about the specific felony offense. And I referenced the Michigan, the MCL, site in my brief as an example. And I think if you look at the elements of that, it also talks about a lab report. The substance has to be proven that it's marijuana also, which hasn't been done in this case, as well as the weight is also discussed as being a critical factor determining what the sentences, what potential sentences there could be if it were to be independently charged. Second, it was mentioned about the standard of review. Even on a clearly erroneous standard of review, this should be upheld, this enhancement. I will note that, of course, I've noted that my second argument is plain error review. But typically, if it were a preserved argument, it would be clearly erroneous as to factual findings, but legal conclusions such as the interpretation of the guideline or other case law, that's a de novo standard of review, as this court is well aware. Also, the quantity issue. Again, I want to reiterate that I, and again, I guess it's speculation from the record, but the eight ounces, the half-pound language of marijuana, again, I think the defense trial counsel was erroneous in stating that in his arguments. Again, the only source of that number is from the confidential informant's purported statements, which were referenced in the pre-sentence report, that at one time eight ounces, in this person's opinion, had been seen there. Also, again, I want to point out the inexact nature of the weight element. Four jars, two containers, that could be any number from a few milligrams to a metric ton. It's just incredibly inexact. I think, finally, I'd just like to mention that this enhancement, as the court knows, the defendant doesn't have to be convicted of, nor does the defendant even need to be charged with this offense. Typically, it's on a preponderance standard of review. So if the district court also, then, is removed from the... I'm sorry, Judge. Since there were no objections at the time of sentence, what standard of review is before our court? It's a plain error standard, Your Honor, certainly. As to my second argument, as to the insufficiency of evidence. I see. Yes, certainly. And even on plain error, Judge Keith, I think that this will satisfy, or the reversal should be granted. If my time is up, I'd ask for... But there were no objections at the time of sentence. As to my second argument, as to the insufficiency of evidence. That's correct, Your Honor. My time is up, unless the court has any further questions of me. Apparently not. Mr. Clark, the court would like to thank you for taking this case on the Criminal Justice Act. We know you do that as a service to the court. It's been my pleasure, Your Honor. Judge Keith, Judge Clay, Judge White, thank you very much for your time. Appreciate it. Thank you very much. And the case is submitted.